U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2024 JUL 15  PM 4:33

CLERK

BY _____
DEPUTY CLERK

JOHN CAHILL,                          )
                                      )
            Plaintiff,                )
                                      )
      v.                              )      Case No. 2:24-cv-163
                                      )
DIANE F. CAHILL; COLLEEN CAHILL-      )
VIEIRA; JOSEPH G. BLANCHET; TONIA     )
SCHMIDT; MARK PREBLE; LISA VOSE;      )
WILLIAM SOULE; BRIAN L. SPENCER,      )
                                      )
            Defendants.               )

## ENTRY ORDER
## DISMISSING AMENDED COMPLAINT AND GRANTING LEAVE TO AMEND
(Doc. 4)

On March 26, 2024, Plaintiff John Cahill, a Massachusetts resident representing

himself, was granted *in forma pauperis* ("IFP") status. However, his Complaint seeking

to allege civil rights violations under 42 U.S.C. § 1983 against multiple defendants

including his mother and sister was dismissed upon review under 28 U.S.C.

§ 1915(e)(2)(B) for failure to state a claim. Plaintiff was granted leave to amend. On

April 29, 2024, Plaintiff timely filed an Amended Complaint again seeking to allege civil

rights violations against many of the same defendants as well as one newly named

defendant. (Doc. 4.)

### I.    Allegations of Plaintiff's Amended Complaint.

Plaintiff's Amended Complaint is an eight-page typewritten single-spaced

document without attachments. It names Colleen Cahill-Vieira, Diane Cahill, Joseph

Blanchet, Tonia Schmidt, Mark Preble, Lisa Vose, William Soule, and Brian L. Spencer

as defendants.

Plaintiff alleges "[t]he primary crime that took place was my getting electrocuted

in the State of Vermont. Following this event, the Defendant [Cahill-Vieira] did in fact

commit perjury in the Court house of Chelsea[,] V[ermont] via stating under oath that she had no knowledge of the electrical issue being present." (Doc. 4 at 2.) Plaintiff asserts Defendant Cahill-Vieira knew about the issue, but failed to address it, and he was electrocuted in the shower on June 21, 2022. He alleges that he has severe permanent hearing damage and that his vision damage "was severely exacerbated" from the electrocution. *Id.* at 7.

Plaintiff alleges that he performed unpaid work on his sister Ms. Cahill-Vieira's property in Chelsea, Vermont. He maintains that his labor had a monetary value of $200,000 to $350,000. He states that "[a]fter doing so much work to that property, without pay of any form, I went off when Colleen got wedding day drunk, and started bossing me around, telling me to do all kinds of stuff that had no reason to be done[.]" (Doc. 4 at 5.) He seeks payment for the services rendered at the property and at the wedding. He alleges that since his labor was performed over seven years ago, "[p]ain and sufferings related to this unpaid labor, which is generally sought at three times market value, which is also subject to the time value of [money], as well as the decrease of the [United States] [d]ollar value, would genuinely be fairly set at about a seven-digit figure." *Id.* at 2-3.

The Amended Complaint also contains allegations regarding an incident in New Hampshire that occurred on August 19, 2022. Plaintiff alleges that as he exited Interstate 89 in West Lebanon, New Hampshire, Defendants Preble, Schmidt, Spencer, and Blanchet were crossing the road in a single-file line without a crosswalk while Plaintiff had a green light. He asserts that Mark Preble was "the leader of the pack" and that he approached Plaintiff's driver side door. *Id.* at 6. Plaintiff describes the altercation as follows:

> I rolled the window down, and [Defendant Preble] "went through the window" as he states to the police, yelling while he dropped his right foot back and cocked his arm to throw a punch through the window at me. I saw it coming very quickly, threw the car in park, put the emergency brake on, grabbed a can of bear mace, and got out of the car to chase these people from in front of my car so I could drive away. I got back into my car to continue to Walmart, and the entire crowd of the 110 Grill patio flooded the

street. I pulled over to the right of the road in the break-down lane area, put the car in park, got out of the vehicle and chased these drunken New Hampshire residents and guests away from my path of travel [a]gain. I got back into the car, and proceeded on, or at least tried to, and yet again the road was flooded with people. So, this time, I pulled right into the parking lot, and parked in the handicapped parking place. I even put my handicapped parking placard on the rear-view mirror's hanging place, got out of the car, and chased people around for a while. And . . . it is indeed true that I went up to the large window in the front of the restaurant . . . and put [my] lips on the glass in front of everyone, and blew real hard . . . .

Then, as I was walking back to my vehicle, parked in the handicapped parking place, placard hung properly and everything, a group of three younger 110 Grill patrons . . . rushed me from the left. So I didn't bother to spray them, cause bear mace, aka "Bear Spray" is designed to shoot from [thirty to forty] feet away accurately. They were about [four or five] feet from me. So I just barely dusted them. But I dusted them decently. They went away, giving me no more trouble. I then turned to the group which forced me to stop to begin with, and just barely dusted them, because I wasn't looking to pay anyone's medical bills. I just wanted everyone to leave me alone completely. And they did, too.

Then, I got back into my car, started it, adjusted the music, and began to wipe my hands with a baby wipe. Then I wiped the can down with a baby wipe. And that caused me to have to wipe my hands again. Then, as I began to try to pull away, there were already cop cars everywhere. . . . I was arrested, and went to jail[.]

(Doc. 4 at 6-7.) Plaintiff states "[e]ven though there were only [six] people who attacked/assaulted and harassed me tha[t] I am able to identify in this suit, there were more like [forty to fifty] New Hampsurians who took part in the attack, as they were all drunk[.]" *Id.* at 3. He posits that this incident is connected to his June electrocution:

What are the odds that there were no malicious intentions involved in this event? After being electrocuted, and not accepting that it was simply an accident, due to all the factors in play at that point in time, is it not likely that there was an attempt to have me jailed for a long enough time where there would be no recourse available to me?

*Id.* at 4. Plaintiff alleges that he was jailed in New Hampshire from August 19, 2022 until November 23, 2022. He asserts he "suffered from malicious behavior of correctional facility staff, inmates, and lack of [prescription] medication[.]" *Id.* at 7.

3

Plaintiff asserts he was evicted "without any form of due process, which is absurdly illegal." *Id.* at 2. He explains the eviction was due to "the elder abuse nonsense, even though I had it on body camera that I never hit her or pushed her[.]" *Id.* at 7. As a result, he claims the "state of Vermont owes me for evicting me illegally." (Doc. 4 at 7.)

Plaintiff alleges "[s]ubject matter jurisdiction is the fact that I really did get electrocuted on a property that is well insured and is also owned by a person who has worked for what may be the largest conglomerate corporation in America." *Id.* at 5. He further asserts:

> Sufficient factual matter is that I really was electrocuted in the shower . . . at the . . . Chelsea [property] and then arrested for a shenanigan which caused no harm to anyone involved by me . . . . And what makes this matter especially noteworthy was that I was released on my own personal recognizance but was forced to stay in jail while I was abused by a decent sized portion of the professional community of America due to how my mother reacted when I called her. A blatant shenanigan pulled by [Defendant] Cahill-Vieira, as . . . her and my mother[ Defendant Cahill] likely saw the left side of my face after getting electrocuted, and tried anything and everything they could do to suppress me and defend themselves.

*Id.* at 6. Plaintiff seeks $500,000,000 in damages. He claims that New Hampshire owes him "at least" $100,000,000, Vermont "another" $100,000,000, and the "remaining $300,000,000 can be taken from the insurance company of Aschunett . . . and the insurance company of whoever [Defendant] Cahill-Vieira is in cahoots with[.]" *Id.* at 8.

## II.   Judicial Notice of Vermont Family Court Docket.

The court takes judicial notice of the Vermont Superior Court docket in *Colleen Cahill-Vieira v. John Cahill*, Case No. 23-CV-03243, Orange Unit. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (explaining "docket sheets are public records of which [a] court [can] take judicial notice").

4

The docket reveals that on July 27, 2023, Ms. Cahill-Vieira filed a civil Complaint against Plaintiff seeking possession of real property. On August 18, 2023, Plaintiff appeared and answered the Complaint. Following an eviction hearing on February 12, 2024, the same day that Plaintiff filed his IFP Application in this court, the Vermont Superior Court granted eviction and a writ of possession and entered judgment for Ms. Cahill-Vieira.

## III.     Conclusions of Law and Analysis.

### A.     28 U.S.C. § 1915(e)(2)(B) Standard of Review.

Under the IFP statute, the court is required to conduct an initial screening of a proposed Complaint. *See* 28 U.S.C. § 1915(e)(2). The court must dismiss the Complaint if it determines that the action is "frivolous or malicious[,]" fails to state a claim on which relief can be granted, or seeks monetary relief "against a defendant who is immune from such relief." *See* 28 U.S.C. § 1915(e)(2)(B). Although the court must read a self-represented plaintiff's complaint liberally and construe it to raise the strongest arguments it suggests, *Harris v. Miller*, 818 F.3d 49, 56 (2d Cir. 2016) (per curiam), "[d]ismissals [under § 1915] are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). Additionally, if subject matter jurisdiction is lacking, the court cannot proceed further. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Consequently, all complaints must contain grounds for the court's subject matter jurisdiction as well as "sufficient factual matter[] . . . to state a claim" for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). In determining whether a complaint states a claim, the court must "accept as true all of the allegations contained in a complaint" and decide whether the complaint states a plausible claim for relief. *Id.*; *see also* Fed. R. Civ. P. 8(a) (listing required contents of a pleading that states a claim for relief). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Iqbal*, 556 U.S. at 678. Self-represented litigants must satisfy the plausibility standard set forth in *Iqbal*. *See Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 80-81 (2d Cir. 2020). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### B.    Whether Plaintiff's Amended Complaint States a Basis for the Court's Subject Matter Jurisdiction.

Federal courts "have an independent obligation to consider the presence or absence of subject matter jurisdiction[.]" *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006). "[S]ubject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Generally, "federal courts have subject matter jurisdiction either on the basis of substance, where there is a federal question, or on the basis of citizenship, where the requirements for diversity jurisdiction are satisfied." *Gottlieb v. Carnival Corp.*, 436 F.3d 335, 337 n.3 (2d Cir. 2006). The party "asserting [federal] subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016).

Plaintiff's Amended Complaint does not present a federal question. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."). His Amended Complaint, unlike the initial Complaint, does not seek to allege claims under § 1983. It also does not cite any other federal statute, law, or constitutional right. Because Plaintiff's Amended Complaint does not state a claim under federal law, the court does not have federal question subject matter jurisdiction under 28 U.S.C. § 1331.

Plaintiff's Amended Complaint also does not contain plausible allegations supporting the court's exercise of diversity subject matter jurisdiction. 28 U.S.C. § 1332

requires that the amount in controversy in the case exceeds $75,000, exclusive of interest and costs, and that the matter is "between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1); *see also Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir. 2014) (explaining complete diversity requires that "all plaintiffs . . . be citizens of states diverse from those of all defendants"). The Amended Complaint seeks damages in excess of the statutory requirement. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) ("When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith."). However, Plaintiff has not alleged the citizenship of each defendant. *See Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53-54 (2d Cir. 2019) (explaining an individual's citizenship, for diversity purposes, is determined by the individual's domicile). As a result, the court cannot determine that complete diversity exists between Plaintiff and all Defendants. *See Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996) ("It is firmly established that diversity of citizenship 'should be distinctly and positively averred in the pleadings[.]'") (quoting *Wolfe v. Hartford Life & Annuity Ins. Co.*, 148 U.S. 389, 389 (1893)). As a result, the court lacks diversity subject matter jurisdiction under 28 U.S.C. § 1332.

Because the court lacks subject matter jurisdiction, the Amended Complaint must be DISMISSED WITHOUT PREJUDICE. *See* Fed. R. Civ. P. 12(h)(3); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.").

## C.    Instructions Regarding a Second Amended Complaint.

Plaintiff may file a proposed Second Amended Complaint. *See Minard v. Pareto Partners*, 2005 WL 2206783, at *2 (S.D.N.Y. Sept. 12, 2005) (explaining that where the court raises the issue of subject matter jurisdiction *sua sponte*, "it is fair to allow plaintiff . . . to attempt to demonstrate that the parties are completely diverse"). Plaintiff is advised that, if filed, it will supersede and completely replace both original and Amended Complaints. *See Hancock v. Cnty. of Rensselaer*, 882 F.3d 58, 63 (2d Cir. 2018) (noting

"it is well settled that an amended pleading ordinarily supersedes the original and renders it of no legal effect") (brackets and internal quotation marks omitted).

A Second Amended Complaint must include Plaintiff's factual allegations in their entirety and must set forth the claims he alleges against each defendant and all the relief he seeks. *See Terry v. N.Y.C. Dep't of Corr.*, 2012 WL 718555, at *2 (S.D.N.Y. Mar. 6, 2012) (explaining "[i]t is well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint" should be granted). It must comply with the Federal Rules of Civil Procedure, including setting forth a short and plain statement of the grounds for the court's subject matter jurisdiction as well as a short and plain statement of each claim as required by Rule 8, in consecutively numbered paragraphs as required by Rule 10, and Plaintiff's original signature as required by Rule 11. For further reference, Plaintiff may consult the court's Representing Yourself as a *Pro Se* Litigant Guide, available on the court's website at www.vtd.uscourts.gov/filing-without-attorney-1 or contact the District of Vermont Clerk's Office for a self-represented party's informational pamphlet.

## CONCLUSION

For the reasons stated above, upon review under 28 U.S.C. § 1915(e)(2)(B), Plaintiff's proposed Amended Complaint (Doc. 4) is DISMISSED. Plaintiff is GRANTED leave to file a proposed Second Amended Complaint that will also be subject to review under § 1915(e)(2)(B), no later than August 16, 2024. Failure to do so shall result in dismissal of the case.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this _15_ day of July 2024.

Christina Reiss, District Judge
United States District Court

8